**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

JOHN H. WHITE,

                                    Plaintiff,

            v.                                              No. 9:13-CV-392
                                                            (GTS/CFH)

DAVID ROCK; et al.,

                                    Defendants.
_____

**APPEARANCES:**                              **OF COUNSEL:**

JOHN H. WHITE
Plaintiff Pro Se
08-A-3366
Attica Correctional Facility
Box 149
Attica, New York 14011

HON. ERIC T. SCHNEIDERMAN          C. HARRIS DAGUE, ESQ.
Attorney General for the           Assistant Attorney General
State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

    Plaintiff pro se John H. White ("White"), an inmate who was, at all relevant times, in the

custody of the New York Department of Corrections and Community Supervision

("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983.  Dkt. No. 1 ("Compl.").

Presently before the undersigned is defendants' motion for summary judgment and

---

    [1]  This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C.
§ 636(b) and N.D.N.Y.L.R. 72.3(c).

dismissal of White's complaint pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 56. Dkt. No. 139. White has opposed the motion. Dkt. Nos. 161, 163, 164, 169, 170, 172, 178. For the following reasons, it is recommended that defendants' motion be granted in part and denied in part.

## I. BACKGROUND

## A. Facts[2]

The facts are related herein in the light most favorable to White as the nonmoving

---

[2]  Local Rule 7.1(a)(3) states:

> Summary Judgment Motions
>
> Any motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.
>
> . . . .
>
> The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises.  <u>The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert</u>. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute . . . .

N.D.N.Y. L. R. 7.1(a)(3) (emphasis in original). Defendants filed a Statement of Material Facts with citations to exhibits. White annexed exhibits to his Memorandum of Law in opposition to defendants' motion. The parties have not objected to the authenticity of any documents. Therefore, to the extent that the "facts" asserted by the parties are supported by the record, the undersigned will consider the facts and relevant exhibits/documents in the context of the within motion. See <u>U.S. v. Painting known as Hannibal</u>, No. 07-CV-1511, 2010 WL 2102484, at *1, n.2 (S.D.N.Y. May 18, 2010) (citing <u>Daniel v. UnumProvident Corp.</u>, 261 F. App'x 316, 319 (2d Cir. 2008) ("[A] party is not required to authenticate documents on a summary judgment motion where, as here, authenticity is not challenged by the other party.") (citation omitted). The facts recited are for the relevant time period as referenced in the complaint.

party.  See subsection II(A) infra.  At all relevant times, White was confined at Upstate Correctional Facility ("Upstate C.F.").  Dkt. No. 139-2 at 1.[3]  White is currently serving a term of incarceration of twenty-five years to life for murder in the second degree, attempted robbery in the first degree, and attempted robbery in the second degree.  Dkt. No. 139-6 at 2-3.  In June 2010, defendant David Rock ("Rock") was the Superintendent of Upstate C.F., defendant Donald Uhler ("Uhler") was the Deputy Superintendent of Security, and defendant Michael Lira ("Lira") was the Deputy Superintendent of Programs.  Dkt. No. 139-4 at 5.

On June 27, 2010, White was notified, by a public address announcement, that he had a visitor at the facility.  Dkt. No. 139-6 at 8.  At approximately 9:00 A.M. or 10:00 A.M., defendant Officer Raymond Drake ("Drake") came to White's cell in the Special Housing Unit ("SHU"),[4] and told White that his visitor was arrested and that the visit was cancelled. Id. at 9.  White began kicking the cell door to "get attention from the staff."  Id. at 10.  Drake yelled at White to "calm down" and then walked away.  Id. at 10.  White knelt down on his hands and knees with his face and chest on the ground in an attempt to utilize the "audio system" to make a "verbal record" of what transpired.  Id. at 10, 12-13.  The door to White's SHU cell was "a big heavy steel contraption" that was "thick and made out of steel or metal or iron."  Dkt. No. 139-6 at 11.  If White attempted to talk through the door, the sound would be muffled; therefore, White had to speak through the space between the door and the

_____

[3] Citations to page numbers refer to the pagination generated by CM/ECF, not the page numbers generated by the parties.

[4] SHUs exist in all maximum and certain medium security facilities.  The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ."  N.Y. COMP. CODES R. & REGS. tit 7, § 300.2(b).  Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required.  Id. at pt. 301.

floor.  Id.  White was on the floor for less than three minutes.  Id. at 12.

While White was still on the floor with his face near the bottom of the door, Drake returned and began kicking the door.  Dkt. No. 139-6 at 10, 12.  White testified that Drake kicked the door five times in a hard manner, analogous to a "football punt."  Id. at 13.  The SHU door had a roll bar at the top of the door and rested on a slide.  Id. at 11.  As a result, the door would "rock" and "shake" when struck.  Id.  When Drake kicked the door, it rocked and hit White, with force similar to a punch, on the right side of his face near his nose, jaw, right eye, and right temple.  Dkt. No. 139-6 at 12, 14.

White suffered a split lip that bled for four hours, a bloody nose with swelling, and swelling to the right side of his face.  Dkt. No. 139-6 at 14-15.  White asked Drake to contact medical, and Drake refused.  Id. at 14.  White asked Drake why he kicked the door and Drake responded, "because I can."  Id.  White asked Drake to contact the sergeant, and defendant Sergeant Jon Oropallo ("Oropallo") arrived at White's cell.  Id.  White asked Oropallo for medical attention, and Oropallo refused.  Dkt. No. 139-6 at 14.

On June 28, 2010, at approximately 6:15 A.M., defendant Nurse Elizabeth White ("Nurse White") responded to White's sick call request and examined White at his cell.[5] Dkt. No. 139-4 at 2; Dkt. No. 139-6 at 18.  On June 30, 2010, medical staff responded to White's sick call request and examined White at his cell.[6]  Dkt. No. 139-6 at 19; Dkt. No. 140 at 8.  White complained of jaw pain.  Dkt. No. 139-6 at 18.  On July 2, 2010, Travers

---

[5] The facts regarding what transpired during this examination are disputed.

[6] The progress note memorializing White's June 30, 2010 treatment is illegible.  Dkt. No. 140-8. White testified that he was treated by Nurse M. Travers and defendant Nurse Amber Lashway ("Lashway"). Dkt. No. 139-6 at 19.  Travers is not a defendant herein.  The record does not include an affidavit from Lashway or Travers.

4

responded to White's sick call request and provided White with four packets of Tylenol. Dkt. No. 139-2 at 2; Dkt. No. 139-6 at 19.

On July 3, 2010, White was treated again by Nurse White. Dkt. No. 139-6 at 19. Nurse White provided him Tylenol for "general pains." Id.; Dkt. No. 139-4 at 3; Dkt. No. 140 at 9. Nurse White did not observe any injury to White's lip, face, nose, or eye. Id. On July 7, 2010, Travers responded to White's sick call request. Dkt. No. 139-4 at 3. White's condition was reported as "no change as documented above." Dkt. No. 140 at 9.

On July 8, 2010, Oropallo and Nurse White came to White's cell to complete a formal injury report regarding the June 27, 2010 incident with Drake. Dkt. No. 139-6 at 19-20. White stated, "I was on the floor talking at bottom of door. He kicked the door and the door hit my face." Dkt. No. 140 at 18. Nurse White completed the medical portion of the Inmate Injury Report. Dkt. No. 139-4 at 4. Nurse White observed White through the cell door and reported, "[n]o injury noted at this time. Inmate argumentative and uncooperative with further evaluation." Dkt. No. 139-4 at 4; Dkt. No. 140 a 18. Nurse White noted that no treatment was "indicated at this time." Id.

On July 9, 2010, Drake prepared a Memorandum to Oropallo regarding White. Dkt. No. 164 at 41. Drake claimed that on June 27, 2010, he told White that his visit was canceled. Id. After learning this, White "became angry and started yelling." Id. Drake stated that he did not assault White or cause White to sustain any injury. Id. On July 9, 2010, Oropallo prepared a Memorandum addressed to Lieutenant T. Lombard ("Lombard").[7] Dkt. No. 164 at 42. Oropallo stated that he interviewed White on July 8, 2010 regarding a complaint that

---

[7] Lombard is not a defendant herein.

5

White "authored" on June 27, 2010.  Id.  Oropallo reported that on June 27, 2010, he arrived at White's cell after Drake informed him that White wanted to speak with a supervisor.  Id.  At that time, White did not express any medical concerns, and Oropallo did not witness any injuries or blood from an alleged injury.  Dkt. No. 164 at 42.  During the July 8 interview, White was "visually assessed at his cell" by Nurse White with "no injuries noted."  Id.  During the interview, White made the same "accusations as he stated in his complaint and added nothing further."  Id.  White was "argumentative" and insisted on preparing his own inmate injury report.  Id.

On July 12, 2010, Lombard prepared a memorandum for Captain D. Quinn ("Quinn").[8] Dkt. No. 164 at 43.  Lombard indicated that on July 12, 2010, he interviewed Inmate E. Allen ("Allen"), an alleged witness to the June 27, 2010 incident.  Id.  Allen stated that the incident happened, "just as White wrote it."  Id.  Allen claimed that Drake kicked the door while White was kicking the door and yelling out from under the door.  Id.

White received additional medical treatment on July 13, 2010; July 14, 2010; July 15, 2010; and July 19, 2010 for complaints of jaw pain, and "regularly" received Tylenol and Ibuprofen.  Dkt. No. 139-6 at 21; Dkt. No. 139-4 at 4-5.  At some point, White also attended a dental "call-out" and was seen by a dentist.  Dkt. No. 139-6 at 21.

**B.  Procedural History**

---

[8] Quinn is not a defendant herein.

On April 8, 2013, White filed his complaint in this action.  Dkt. No. 1 ("Compl.").[9]

Following an initial review of White's complaint, the Court directed Drake, Oropallo, White,

Lashway, Rock, Uhler, and Lira to respond to White's Eighth Amendment excessive force

claims and deliberate indifference to medical care claims.  Dkt. No. 42 at 13-14.  On May

11, 2015, defendants filed the within motion pursuant to Fed. R. Civ. P. 56 seeking

summary judgment and dismissal of White's complaint.  Dkt. No. 139.


## II. DISCUSSION[10]

   White alleges that he was subjected to Eighth Amendment violations related to the use

of excessive force and deliberate indifference to a serious medical condition.  See generally

Compl.  White also asserts supervisory claims against Rock, Uhler, Lira, and Lashway, and

alleges that defendants violated various sections of the New York State Corrections Law

---

   [9]  The Court observes that White initially filed a complaint regarding the actions allegedly occurring on June 27, 2010 on August 9, 2010.  Adopting Magistrate Judge Homer's Report-Recommendation, District Judge Suddaby granted defendants' motion to dismiss, dismissed White's complaint without prejudice, and denied White's cross motion to amend his complaint.  See White v. Drake, 10-CV-1034 (GTS/DRH), 2011 WL 4478921 (N.D.N.Y. Sept. 26, 2011).  In granting the motion to dismiss, Judge Suddaby concluded that White complaint should be dismissed but that White

> should be required to file a new action rather than be permitted to simply file an Amended Complaint in this action on the following additional grounds: (1) plaintiff will not be untimely prejudiced by the Court's current Decision and Order, because the three-year limitations period governing his claims . . . does not yet appear to have expired, and because no reason exists to believe that plaintiff in forma pauperis status has changed since it was granted . . . , and (2) if the court were to simply accept for filing the proposed Amended Complaint that has been submitted, the Court would actually be prejudicing plaintiff because the pleading deficiencies in that Amended Complaint . . . would cause the Court to dismiss the action *with prejudice*.

Id. at *8.  It appears that plaintiff's commencement of the instant action is in accordance with Judge Suddaby's September 26, 2011 Decision and Order dismissing the action without prejudice.

   [10]  All unpublished opinions cited to by the undersigned in this Report-Recommendation are, unless otherwise noted, attached to this Report-Recommendation.

and DOCCS policies/procedures.  See id.

## A.  Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact, it was supported by affidavits or other suitable evidence, and the moving party is entitled to judgment as a matter of law.  FED R. CIV. P. 56(a).  The moving party has the burden to show the absence of disputed material facts by providing the court with portions of pleadings, depositions, and affidavits which support the motion.  FED R. CIV. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences drawn in favor of the non-moving party.  Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial, and must do more than show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  For a court to grant a motion for summary judgment, it must be apparent that no rational finder of fact could find in favor of the non-moving party.  Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1998).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit has stated,

[t]here are many cases in which we have said that a pro se

8

litigant is entitled to "special solicitude," . . . that a <u>pro se</u> litigant's submissions must be construed "liberally," . . . and that such submissions must be read to raise the strongest arguments that they "suggest,". . . . At the same time, our cases have also indicated that we cannot read into <u>pro se</u> submissions claims that are not "consistent" with the <u>pro se</u> litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by <u>pro se</u> litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[.]

<u>Id.</u> (citations and footnote omitted); <u>see also</u> <u>Sealed Plaintiff v. Sealed Defendant</u>, 537 F.3d 185, 191-92 (2d Cir. 2008).

## B. Eleventh Amendment

Defendants move for summary judgment and dismissal of White's claims against them in their official capacity. Dkt. No. 139-3 at 10. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his own State." <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 98 (1984) (citing <u>Hans v. Louisiana</u>, 134 U.S. 1, 21 (1890)). Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. <u>Halderman</u>, 465 U.S. at 100. Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. <u>See</u> <u>Quern v. Jordan</u>, 440 U.S. 332, 340-41 (1979).

A suit against a state official in his or her official capacity is a suit against the entity that employs the official. Farid v. Smith, 850 F.2d 917, 921 (2d Cir. 1988) (citing Edelman v. Jordan, 415 U.S. 651, 663 (1974)). "Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself," rendering the latter suit for money damages barred even though asserted against the individual officer. Kentucky v. Graham, 473 U.S. 159, 166 (1985).

Here, because White seeks monetary damages against defendants for acts allegedly occurring within the scope of their duties, the Eleventh Amendment bar applies and serves to prohibit claims for monetary damages against them in their official capacity. Accordingly, the undersigned recommends that defendants' motion for summary judgment and dismissal of White's claims for monetary damages against defendants in their official capacity be granted.[11]

## C. Eighth Amendment[12]

### 1. Excessive Force

Inmates enjoy an Eighth Amendment protection against the use of excessive force and

---

[11] White's opposition papers provide that he "withdraws civil penalties against defendants in their official capacities on basis of the established case law of the Supreme Court of the United States." Dkt. No. 164 at 6.

[12] White argues that defendants mistakenly rely upon the Fourth Amendment in their analysis of his excessive force claim. Dkt. No. 164 at 6-8. The undersigned's reading of defendants' opposition papers suggests that defendants argued against the excessive force claim pursuant to the Eighth Amendment; regardless, assessing the excessive force claims under the Eighth Amendment is proper. See Bonilla v. Jaronczyk, 354 F. App'x 579, 581 (2d Cir. 2009) (" While claims of excessive force in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment, post-conviction excessive force claims [. . .] , are properly considered under the Eighth Amendment.") (internal quotation marks and citation omitted).

may recover damages for its violation under § 1983. <u>Hudson</u>, 503 U.S. at 9-10. The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain." <u>Gregg v. Georgia</u>, 428 U.S. 153, 173 (1976); <u>Sims v. Artuz</u>, 230 F.3d 14, 20 (2d Cir. 2000). To bring a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements. <u>Blyden v. Mancusi</u>, 186 F.3d 252, 262 (2d Cir. 1999).

The objective element is "responsive to contemporary standards of decency" and requires a showing that "the injury actually inflicted is sufficiently serious to warrant Eighth Amendment protection." <u>Hudson</u>, 503 U.S. at 9 (internal citations omitted); <u>Blyden</u>, 186 F.3d at 262. However, "the malicious use of force to cause harm constitute[s an] Eighth Amendment violation <u>per se</u>" regardless of the seriousness of the injuries. <u>Blyden</u>, 186 F.3d at 263 (citing <u>Hudson</u>, 503 U.S. at 9). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition <u>de</u> <u>minimis</u> uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." <u>Hudson</u>, 503 U.S. at 9-10 (citations omitted). "[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." <u>Sims</u>, 230 F.3d at 22 (quoting <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir. 1973)).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness[.]" <u>Sims</u>, 230 F.3d at 21 (citation and internal quotation marks omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" <u>Id</u>. (quoting <u>Hudson</u>, 503 U.S. at 7). In determining whether a

11

defendant acted in a malicious or wanton manner, the Second Circuit has identified five

factors to consider:

> the extent of the injury and the mental state of the defendant [;]
> . . . the need for the application of force; the correlation between
> that need and the amount of force used; the threat reasonably
> perceived by the defendants; and any efforts made by the
> defendants to temper the severity of a forceful response.

Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations

omitted).

Here, White claims that, on June 27, 2010, Drake kicked his cell door several times,

"caus[ing] plaintiff bodily harm [including] swelling of the face, nose & jaw, with a discharge

of blood from the mouth & nose."  See Dkt. Compl. at 5; Dkt. No. 42 at 7.  White alleges

that Drake "launch[ed]" a steel door into his skull and facial area with "rapid and

successive" kicks.  See Dkt. No. 164 at 9.  Defendants argue that, even assuming that

White's allegations are true, the level of force exerted was de minimis, and, thus, summary

judgment is warranted.  See Dkt. No. 139-3 at 11-12.  Defendants contend that the "rocking

on its track of a metal SHU cell door approximately 2 inches, 5 times," is insufficient to

satisfy the objective prong of an excessive force claim.  See Dkt. No. 139-3 at 11.

Viewing the evidence in a light most favorable to White, there are genuine issues of

material fact precluding summary judgment on the excessive force claim, including the level

of force used, the extent of White's injuries, and whether Drake used force in a malicious

manner.  See Grippin v. Crippen, 193 F.3d 89, 91 (2d Cir. 1999) ("[T]he malicious use of

force to cause harm constitutes an Eighth Amendment violation[] per se . . . whether or not

significant injury is evident.").  With respect to the objective analysis, the record contains

conflicting testimony and evidence regarding the severity of White's injuries following the

incident. White testified that immediately following the incident, he was "bleeding profusely." Dkt. No. 139-6 at 14. White contends that his nose continued to bleed for approximately four hours and asserts that he was not permitted to photograph his injuries or prepare an Injury Report on the day of the incident. Id.; Dkt. No. 164 at 11. Oropallo concedes that on the day of the incident, White reported what transpired, but Oropallo did not prepare an Injury Report/Facility Health Services Report until July 8, 2010. See Dkt. No. 140 at 18; Dkt. No. 164 at 42. White received medical attention the day after the incident. Dkt. No. 139-4 at 2; Dkt. No. 139-6 at 18. White testified that he told Nurse White that he was "injured by an officer the previous day," and asserts that his face was swollen at the time of the examination. Dkt. No. 139-6 at 18. Conversely, Nurse White avers that she did not observe any facial injuries and claims that White did not complain of any such injuries. Dkt. No. 139-4 at 3. Nurse White's medical note indicates that she provided "Tylenol for general pain." Dkt. No. 139-4 at 3; Dkt. No. 140 at 7.

Where the issue of "whether [the] plaintiff's injuries [ . . . ] were significant enough to avoid the de minimis label depends on the resolution of a triable issue of fact," summary judgment is not appropriate. See McCrory v. Belden, No. 01 Civ. 0525, 2003 WL 22271192, at *6 (S.D.N.Y. Sept. 30, 2003) ("'Minor' injuries suffice for an Eighth Amendment claim, and bruising or equivalent injuries may be found be a reasonable fact-finder to constitute minor rather than de[]minimis harm.") (citation omitted); see also Webster v. City of New York, 333 F. Supp. 2d 184, 197 (S.D.N.Y. 2004) (finding that, while the plaintiff's injuries appeared to be minor and a reasonable fact-finder "may well conclude that they do not rise to the level of a constitutional violation," the injuries were not, "as a matter of law, de minimis.").

13

The cases cited by defendants in support of the motion are distinguishable from the facts at hand. Dkt. No. 139-3 at 11-12. In those cases, the parties did not dispute the nature and extent of the injuries that the plaintiffs sustained as a result of the uses of force. In the absence of any genuine, material issue of fact regarding the injuries, the courts in those cases determined, as a matter of law, that the force exerted was de minimis. See Bermudez v. Waugh, No. 9:11-CV-0947 (MAD/DEP), 2013 WL 654401, at *5 (N.D.N.Y. Feb. 21, 2013) (granting summary judgment where the defendant's conduct resulted in injuries that the plaintiff described as a "little red mark" or "red bruise"); Rincon v. City of New York, No. 03 Civ. 8276, 2005 WL 646080, at *5 (S.D.N.Y. Mar. 21, 2005) (dismissing excessive force claim where the plaintiff admitted she was treated only for swelling in her right leg and wrist); Brown v. Busch, 954 F. Supp. 588, 595-96 (W.D.N.Y. 1997) (dismissing excessive force claim where medical records established that two hours after the incident, the plaintiff had a small abrasion on his back); DeArmas v. Jaycox, No. 92 Civ. 6139, 1993 WL 37501, at *4 (S.D.N.Y. Feb. 8, 1993) (dismissing excessive force claim because a medical examination, conducted within hours of the alleged assault, revealed no bruising, swelling, redness, or reports of pain). Here, as stated, there are disputed material facts with respect to the seriousness of White's injuries; thus, the Court cannot determine, as a matter of law, that the amount of force used was de minimis.

As for the subjective prong of the excessive force analysis, although it is undisputed that defendants were tasked with the safety and order of inmates, there are disputed factual issues regarding whether the use of force was necessary, reasonable, or was applied in a malicious manner. The only factual account in the record of what transpired on the day of the incident is taken from White's deposition testimony. White testified that the assault was

14

unprovoked, and that Drake was aware that White was on the floor when he kicked the

door:

> Q. Do you believe that Drake knew you were on the ground with your face against the door when he kicked the door?
>
> A. Yes. I believe that because there was at no time did Drake hear or see me standing to either side of the door and whether it be the left side of the door or the right side of the door yelling through these areas or the front area where the window is at. The only obvious place I could be was on the ground.

Dkt. No. 139-6 at 13.

Defendants have not offered any evidence challenging White's account of the events

surrounding the use of force, and have failed to provide an account from Drake addressing

whether he was aware that White was laying at the base of the door when he kicked it.

Were a trier of fact presented with White's account of the events, the trier or fact could

arguably infer that Drake acted maliciously, insofar as he was aware that the door would hit

White because he knew White was laying at the bottom of the door. See Crawford v.

Braun, No. 99 Civ. 5851, 2001 WL 127306, at *4 (S.D.N.Y. Feb. 9, 2001) (finding that

disputed issues of fact regarding whether force was applied in a good faith manner

preclude summary judgment even absent a significant injury); cf. Brooks v. Rock, No. 9:11-

CV-1171 (GLS/ATB), 2014 WL 1292232, at *16 (N.D.N.Y. Mar. 28, 2014) (finding that the

plaintiff could not establish wanton or malicious conduct where the defendant "busted open"

a bathroom door, causing the door to hit the plaintiff who was on the other side, where the

defendant "could not have know [that the plaintiff] was positioned in such a way that the

door would hurt [the] plaintiff if [the defendant] opened it forcefully.").

In these circumstances, the governing law dictating that the evidence must be viewed in a light most favorable to the non-moving party directs the Court to credit White's version of events for the purposes of this motion.  See In re Dana Corp., 574 F.3d 129, 152 (2d Cir. 2009) (holding that a court faced with a motion for summary judgment must draw all reasonable inferences in the favor of the non-moving party and may not make credibility determinations or weigh the evidence, functions which are reserved to a jury) (citing cases); Robinson v. Via, 821 F.2d 913, 924 (2d Cir. 1987) (citations omitted). Thus, viewing the evidence in the light most favorable to White, he has presented sufficient evidence to raise genuine issues of material fact as to the objective and subjective prongs of the Eighth Amendment excessive force analysis.  Accordingly, the undersigned recommends that defendants' motion on this ground be denied.[13]


## 2.  Deliberate Indifference to Medical Needs

White claims that Drake, Oropallo, Nurse White, Lashway, Rock, Uhler, and Lira delayed medical treatment and failed to provide adequate medical treatment.  See Dkt. No.

---

[13] In his Memorandum of Law in opposition to defendants' motion, White claims that defendants, "concealed materially relevant evidence of [the] steel door that is much needed to combat their summary judgment motion." Dkt. No. 164 at 9.  White also argues that defendants failed to provide him with relevant video evidence of the incident.  Dkt. No. 164 at 10-11.  To the extent that White is attempting to defeat defendants' motion on the basis that he requires additional discovery, that claim/request is denied.  Upon review of White's opposition, the Court directed defendants to provide the Court with a copy of the subject video that defendants were instructed to provide to plaintiff's counselor for his viewing following April 9, 2015 telephone conference and subsequent Decision and Order (Dkt. No. 137).  Dkt. No. 179.  Defendants provided the Court with the video (Dkt. No.180) and claim that the video was made available to plaintiff pursuant to the Court's April 9, 2015 Decision and Order (Dkt. No. 137).  Defendants contend that, despite being provided with an opportunity to view the video, White refused to view the video.  Dkt. No. 180-2.  Assuming, for the purposes of this motion only, that the video is in proper evidentiary form, the undersigned concludes the video is not relevant to the motion herein as it provides no support for plaintiff's claims.  The undersigned has carefully reviewed the entire video, which is five minutes and twenty-five seconds in length. The video contains audio; however, no conversation can be discerned.

139-6 at 21-22. Specifically, White alleges that defendants failed to "document" his "abnormalities," refused to allow him to be examined by a nurse within twenty-four hours of the alleged incident, failed to refer him to a specialist, and refused to order "x-rays, c-scan, MRI (etc.)." See Dkt. No. 164 at 19; Dkt. No. 139-6 at 21-22. White further contends that Nurse White and Lashway were "apathetic" to his complaints and failed to make an accurate and timely injury report. See Dkt. No. 139-6 at 21, 25.

The Eighth Amendment's prohibition against cruel and unusual punishment extends to the provision of medical care. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Hathaway, 37 F.3d at 66. More than negligence is required "but less than conduct undertaken for the very purpose of causing harm." Hathaway, 37 F.3d at 66.

A claim for deliberate indifference to medical needs has two necessary components, one objective and the other subjective. See Hathaway, 99 F.3d at 553. The objective test asks whether there was a sufficiently serious medical need. Chance, 143 F.3d at 702. Deprivation of medical treatment is "sufficiently serious" if there exists "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway, 37 F.3d at 66 (internal citation omitted). "'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury' in order to state an Eighth Amendment claim for denial of medical care." Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003) (quoting Hudson, 503 U.S. at 9).

As there is no bright-line test to determine whether a medical condition is sufficiently

serious, the Second Circuit has identified several factors that are relevant to the objective

prong's inquiry, including: "(1) whether a reasonable doctor or patient would perceive the

medical need in question as 'important and worthy of comment or treatment,' (2) whether

the medical condition significantly affects daily activities, and (3) 'the existence of chronic

and substantial pain.'" Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003) (quoting

McGuckin v. Smith, 974 F.3d 132, 137 (2d Cir. 2000)).

Under the subjective prong, the prisoner must demonstrate that the defendants were

deliberately indifferent to his serious medical needs.  The prisoner may do so when he

demonstrates that "the official knows of and disregards an excessive risk to inmate health

or safety; the official must both be aware of facts from which the inference could be drawn

that a substantial risk of serious harm exists, and he must also draw the inference."

Farmer, 511 U.S. at 837.   "[P]rison officials who actually knew of a substantial risk to

inmate heath or safety may be found free from liability if they responded reasonably to the

risk, even if the harm ultimately was not avoided."  Id. at 844 (citation and internal quotation

marks omitted),

To assert a claim for deliberate indifference, an inmate must allege that: (1) a prison

medical care provider was aware of facts from which the inference could be drawn that the

inmate had a serious medical need; and (2) the medical care provider actually drew that

inference.  Farmer, 511 U.S. at 837; Chance, 143 F.3d at 702.  The inmate must also

demonstrate that the provider consciously and intentionally disregarded or ignored that

serious medical need.  Farmer, 511 U .S. at 835.  Thus, prison officials must be

"intentionally denying or delaying access to medical care or intentionally interfering with the

treatment once prescribed."  Estelle v. Gamble, 429 U.S. 97, 104 (1976) (footnotes

18

omitted). "[M]ere disagreement over the proper treatment does not create a constitutional claim . . . . [s]o long as the treatment was adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." <u>Chance</u>, 143 F.3d at 703 (citation omitted). Thus,

> disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment.

<u>Sonds v. St. Barnabas Hosp. Corr. Health Services</u>, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

### a. Objective Prong

White has failed to establish, with competent, admissible proof, that he suffered from a serious medical condition. White claims, without providing medical support, that he sustained skull trauma and a brain hemorrhage.[14] <u>See</u> Dkt. No. 164 at 20, 21, 25. Construing the record in a light most favorable to White, White suffered a "split lip," "bloody nose," swelling, and jaw pain. <u>See</u> Dkt. No. 139-3.

Courts in this Circuit, including within this District, have consistently held that "cuts, lacerations, bruises, and other superficial injuries," are not "sufficiently serious to support" a deliberate indifference claim. <u>Goodwin v. Kennedy</u>, No. CV 13-1774, 2015 WL 1040663, at

---

[14] White alleges that defendants "have offered no proof that plaintiff did not suffer any brain hemorrhages." Dkt. No. 164 at 20. White misinterprets defendants' burden on the motion for summary judgment. As plaintiff has asserted a deliberate indifference claim under the Eighth Amendment, the *plaintiff* bears the burden of proving that defendants acted with deliberate indifference to a serious medical need, not defendants. Wilson v. Seiter, 501 U.S. 294, 297 (1991).

*12 (E.D.N.Y. Mar. 10, 2015) (citation omitted) (holding that "a split lip, which bled and became swollen . . . [and] needed stitches" did not constitute serious medical condition); Latouche v. Tompkins, No. 09-CV-308 (NAM/RFT), 2011 WL 1103022, at *14 (N.D.N.Y. Mar. 4, 2011) (finding that a four to five centimeter bruise, a two to three centimeter cut, a scratch on the plaintiff's face, and pain from a bump on the right and left sides of his face are not objectively sufficiently serious to support a claim of medical indifference), adopting Report-Recommendation, 2011 WL 1103045 (N.D.N.Y. Mar. 23, 2011)); Dallio v. Hebert, 678 F. Supp. 2d 35, 44-45 (N.D.N.Y. 2009) (holding that two black eyes, bruising in kidney area, kick marks, open lacerations on knees, bruising and red spots on thigh, lacerations on arms and wrists, a headache, and numbness in hands and fingers are not "conditions of urgency that may produce death, degeneration, or extreme pain.") (collecting cases). Accordingly, plaintiff has failed to demonstrate that his split lip, bloody nose, and swelling to his face amounts to a serious medical need.  Dkt. No. 139-6 at 14-15.

### b.  Subjective Prong

Even assuming that White suffered from a "serious medical condition" sufficient to establish the objective element of the Eighth Amendment, White has failed to raise a question of material fact with respect to the subjective prong of the deliberate indifference analysis.

### i.  Delay in Medical Treatment

White claims that defendants Drake, Oropallo, Nurse White, Lashway, Rock, Uhler, and

Lira intentionally denied or delayed access to medical care. <u>See</u> Dkt. No. 164 at 24.

As set out by the Eastern District,

> When the basis of a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged <u>delay</u> or <u>interruption</u> in treatment rather than the prisoner's <u>underlying medical condition</u> alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim.

<u>Brunskill v. County of Suffolk</u>, No. 11-CV-586, 2012 WL 2921180, at *3 (E.D.N.Y. July 11, 2012) (quoting <u>Smith</u>, 316 F.3d at 185) (internal quotation marks omitted). Courts have determined that a delay may constitute deliberate indifference when "officials deliberately delayed care as a form of punishment, ignored a life threatening and fast-degenerating condition for three days, or delayed major surgery for over two years." <u>Brunskill</u>, 2012 WL 2921180, at *3 (citation omitted).

In this instance, White's claims are not supported by the record. The evidence reveals that White was treated on June 28, 2010, just one day after the alleged incident with Drake. Although he claims that he was in pain, White has failed to produce any evidence that the one-day delay caused him to suffer "substantial harm." Further, he has not demonstrated that the one-day delay was an effort to punish him. <u>Cf.</u> <u>Brunskill</u>, 2012 WL 2921180, at *3. Even where a plaintiff makes conclusory allegations of extreme pain, a very short delay in treatment is insufficient where the plaintiff cannot show adverse medical effects or demonstrable physical injury resulting from a minor delay in treatment. <u>See</u>, <u>e.g.</u>, <u>Evans v. Manos</u>, 336 F. Supp. 2d 255, 260, 262 (W.D.N.Y. 2004) (holding that subjective claims of pain, unaccompanied by substantial medical complications, are not sufficient to create a factual issue that the plaintiff was suffering from a "serious" and unmet medial need as

21

"delay alone will not give rise to a constitutional claim unless the delay causes substantial harm.") (citation omitted).  Consequently, White cannot establish that defendants were deliberately indifferent to his medical needs by delaying to treatment by one day.  See Watts v. New York City Police Dep't, 100 F. Supp. 3d 314, 327 (S.D.N.Y. 2015) (finding that one-day delay in providing medical treatment did not constitute deliberate indifference); Brooks, 2014 WL 1292232, at *16 (holding that the plaintiff failed to establish the objective element against a defendant who did not allow the plaintiff to obtain immediate medical treatment after the defendant allegedly kicked open a bathroom door which struck the inmate in the head because the two-day delay in treatment did not involve a significant risk of degeneration of the plaintiff's medical condition or require the plaintiff to endure extreme pain); Williams v. Raimo, No. 9:10-CV-245 (MAD/GHL), 2011 WL 6026111, at *5 (N.D.N.Y. Dec. 2, 2011) ("[P]laintiff failed to provide any evidence to suggest that he was substantially harmed from the one-day delay in treatment.") (citing Croft v. Hampton, 286 F. App'x 955, 959 (8th Cir. 2007)).

### ii.  Disagreements Regarding Treatment

White claims that he was not (1) sent for treatment with a specialist, (2) provided "self-carry medication," (3) referred for a "skull examination," or (4) prescribed a timely MRI.  See Dkt. No. 164 at 19, 24.  Even assuming White's allegations to be true, "[i]nmates do not have a right to chose [sic] a specific type of treatment."  Veloz v. New York, 339 F. Supp. 2d 505, 525 (S.D.N.Y. 2004).  A medical "professional's decision not to administer a specific medical test, regardless of a prisoner's disagreement with that decision, 'is a classic example of the type of medical judgment that is given judicial deference, and does not form

22

the basis of a deliberate indifference claim.'" Curtis v. Williams, No. 11 Civ. 1186 (JMF), 2013 WL 1915447, at *7 (S.D.N.Y. May 9, 2013) (quoting Verley v. Goord, 02-Civ-1182 (PKC/DF), 2004 WL 526740, at *12 (S.D.N.Y. Jan. 23, 2004) and Estelle, 429 U.S. at 107) ("[A] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.")).

With respect to the MRI, White concedes that an "MRI was actually taken," but asserts that there was a "nine month" lag between when the test was ordered and when it was administered. Dkt. No. 164 at 25. To the extent that White attempts to assert a "deliberate indifference" claim against any defendant as a result of that delay, this claim is subject to dismissal. The record lacks any evidence that would permit a rational jury to conclude that any named defendant was responsible or personally involved in any decision regarding White's MRI. "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). Further, the medical records are void of any reference to radiological films. White's claims amount to a disagreement over treatment, and, as such, are insufficient to establish an Eighth Amendment claim. See Dkt. No. 164 at 19-20, 24; Sonds, 151 F.Supp.2d at 312; see Wright v. Conway, 584 F. Supp. 2d 604, 607 (W.D.N.Y. 2008) ("[The plaintiff's] complaints demonstrate no more than his personal dissatisfaction with the level of care that he received, and these claims must therefore be dismissed."). White's "dissatisfaction" with his level of care and course of treatment does not support a finding of deliberate indifference. See Soto v. Wright, No. 11 Civ. 2289, 2013 WL 474291, at *5 (S.D.N.Y. Feb. 1, 2013) (citation omitted).

23

### iii.  Apathy

White claims that Nurse White and Lashway made repetitive entries documenting his "pain and suffering" but their treatment was "cursory" and they displayed "apathy to [his] complaints."  <u>See</u> Dkt. No. 164 at 25.  In support of his argument that a display of apathy amounts to deliberate indifference, White cites <u>Ruffin v. Deperio</u>, 97 F. Supp. 2d 346 (S.D.N.Y. 2000).  In <u>Ruffin</u>, the plaintiff, a diabetic inmate, sustained an injury in an accident in March 1994.  <u>Id.</u> at 349.  The plaintiff's condition deteriorated but he did not undergo surgery until July 1995.  <u>Id.</u>  In opposition to the defendants' motion for summary judgment, the plaintiff provided admissible evidence, including medical records, deposition testimony, and expert witness testimony that established that the defendants' "treatment" of the plaintiff consisted of nothing more than documenting his worsening condition, including "blackening of his toes" and rising glycerin levels, and providing ineffective medications.  <u>Id.</u> at 353-54.  The defendants argued that the plaintiff's allegations were merely a "disagreement over the course of treatment."  <u>Id.</u> at 354.  The Southern District held that, "[a] defendant may not escape liability if the evidence shows that he 'merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.'"  <u>Id.</u> (quoting <u>Farmer</u>, 511 U.S. at 842); <u>Hudak v. Miller</u>, 28 F. Supp. 2d 827, 831 (S.D.N.Y. 1998) ("[I]f the evidence shows that the risk of serious medical problems was so obvious that a reasonable factfinder could infer actual knowledge of them on [the defendants'] part, this Court must deny summary judgment.")).  The Southern District held further that the defendants' "apathy or unconcern" for the plaintiff's plainly serious medical needs could amount to deliberate indifference and refused to award summary judgment, as the defendants' conduct was not remedied by the

24

fact that the plaintiff was provided with some treatment and referred to outside specialists. See id. at 353.

White's reliance upon Ruffin is misplaced. In this instance, White has failed to produce competent, admissible evidence that defendants' conduct was "a substantial departure from accepted professional judgment" and thereby placed him at risk for serious medical problems. From June 28, 2010 until August 31, 2010, White was seen by medical staff on approximately twenty-five occasions. See Dkt. No. 140 at 1-17. White's medical records lack any reference to complaints of specified pain. White continually complained of "general pains" and jaw pain, and was repeatedly treated by Nurse White, Lashway, and other members of the medical staff with Tylenol and Ibuprofen. See id. The record does not establish that White was ignored, that his pain increased in severity, or that his condition deteriorated. Unlike the defendants' failure to act in response to the "obvious symptoms of serious medical problems" in Ruffin, the treatment that Nurses White and Lashway provided does not rise to the level of apathy presented in Ruffin. See Taylor v. Kooi, No. 9:09-CV-1036 (FJS/DEP), 2012 WL 7784264, at *11-12 (N.D.N.Y. Feb. 29, 2012) (declining to apply Ruffin, which preceded Salahuddin v. Goord, 467 F.3d 263 (2d Cir. 2006), where there was no evidence that the plaintiff's condition deteriorated or that his condition was ignored during a five-year period when the plaintiff was provided X-rays, pain medication, and continued monitoring).

Accordingly, White has failed to establish facts sufficient to demonstrate that Nurse White or Lashway made a "substantial departure from accepted professional judgment and that the evidence of risk was sufficiently obvious to infer the defendants' actual knowledge of a substantial risk to [the] plaintiff." Ruffin, 97 F. Supp. 2d at 355.

25

### iv. Failure to Prepare a Timely Injury Report

White alleges that Nurse White and Lashway failed to prepare a timely and accurate injury report. See Dkt. No. 139-6 at 21. The claim that a defendant failed to file an injury report is insufficient to satisfy the subjective prong of the deliberate indifference test. See Harris v. Howard, 07-CV-1065 (TJM/GJD), 2009 WL 537550, at *12 (N.D.N.Y. Mar. 3, 2009) (holding that the defendant nurses' failure to complete an injury report "is not an Eighth Amendment claim under any view of the facts."); Mitchell v. City of New York, 09-CV-3623, 2010 WL 3734098, at *3 (S.D.N.Y. Sept. 23, 2010); Mitchell v. Keane, 974 F. Supp. 332, 342 (S.D.N.Y. 1997) (finding a failure to fill out an injury report does not state an Eighth Amendment claim as "[a]n injury report is not medically necessary for a minimally civilized life."). Further, White does not present any evidence from which a reasonable fact finder could conclude that defendants acted with a "sufficiently culpable mental state." Salahuddin, 467 F.3d at 282. The record establishes that from June 28, 2010 until July 19, 2010, White requested and received Nurses Sick Call on ten separate occasions. Dkt. No. 139-4; Dkt. No. 140. The medical record belies White's claim that any defendant intentionally denied him medical care. Accordingly, the undersigned recommends that defendants' motion for summary judgment and dismissal of White's claim that defendants violated his Eighth Amendment rights through their deliberate indifference to his serious medical needs be granted.

### C. Supervisory Liability

White claims that Rock, Uhler, and Lira failed to adequately train or supervise their

subordinates.[15]  See Dkt. No. 139-6 at 22.  White also asserts that Rock, Uhler, and Lira were deliberately indifferent to his serious medical needs because the defendants "should have known" that his condition was deteriorating because White "routinely encountered each [defendant] and they failed to act on his complaints."  See Dkt. No. 164 at 26.  White also claims that Lashway failed to properly train the nurses under her supervision.  See Dkt. No. 139-6 at 22.

Supervisory officials may not be held liable merely because they hold a position of authority.  Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation,
>
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong,
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom,
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or
>
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)).  Section 1983 liability cannot be based upon a defendants' position in the prison hierarchy.  See Colon, 58 F.3d at 873.

---

[15] White's claims against Rock, Lira, and Uhler that are based upon their alleged failure to follow DOCCS procedures and regulations are discussed infra.

Conclusory claims that a supervisory official has failed to provide proper training and supervision, without facts showing personal involvement, are legally insufficient to state a claim under any of the categories identified in Colon. See Bridgewater v. Taylor, 832 F. Supp. 2d 337, 348 (S.D.N.Y. 2011); White v. Fischer, No. 9:09-CV-0240 (DNH/DEP), 2010 WL 624081, at *6 (N.D.N.Y. Feb. 18, 2010) ("Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability."); see also Pettus v. Morgenthau, 554 F.3d 293, 300 (2d Cir. 2009) (affirming dismissal of complaint against a supervisor when the complaint did not allege any personal involvement and "lack[ed] any hint that [the supervisor] acted with deliberate indifference to the possibility that his subordinates would violate [the plaintiff's] constitutional rights); Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987) ("Dismissal of a section 1983 claim is proper where, as here, the plaintiff 'does no more than allege that [defendant] was in charge of the prison.'") (quoting Williams v. Vincent, 508 F.2d 541, 546 (2d Cir. 1974).

### 1. Rock, Uhler, and Lira

White has failed to establish the personal involvement of Rock, Uhler, or Lira for the claims of excessive force or deliberate indifference to his serious medical needs. The record lacks any evidence suggesting that Rock, Uhler, or Lira directly participated, were involved in, or even aware of the alleged incident with Drake. White's attempt at establishing personal involvement based upon defendants' supervisory roles is inappropriate. See Colon, 58 F.3d at 873. The record is lacks evidence that White complained to any supervisory defendant, other than Oropallo, about the incident with

28

Drake.

Similarly, with regard to the medical indifference claims against the above defendants, White refers generally to "encountering" defendants, but fails to establish, with admissible evidence, when the "encounters" took place or the sum and substance of any conversation that White had with these defendants regarding alleged constitutional violations. Without more, White's conclusory allegations are insufficient to defeat defendants' motion for summary judgment. Moreover, as discussed <u>supra</u>, summary judgment is warranted because White failed to raise an issue of material fact with respect to his Eighth Amendment claims related to the deliberate indifference to his serious medical needs. <u>Hernandez v. Keane</u>, 341 F.3d 137, 144-45 (2d Cir. 2003) ("'Absent some personal involvement by [the supervisory official] in the allegedly unlawful conduct of his subordinates,' he cannot be liable under section 1983.") (quoting <u>Gill v. Mooney</u>, 824 F.2d 192, 196 (2d Cir. 1987); <u>see</u> <u>Elek v. Inc. Vill. of Monroe</u>, 815 F. Supp. 2d 801, 808 (S.D.N.Y. 2011) (collecting cases for the proposition that "because [the p]laintiff has not established any underlying constitutional violation, she cannot state a claim for § 1983 supervisory liability.") (internal quotation marks and citation omitted).

Accordingly, it is recommended that summary judgment be granted as to White's claims for supervisory liability and deliberate indifference against defendants Rock, Uhler, and Lira.

## 2. Lashway

White claims that Lashway "failed to properly train" nurses under her supervision. For the reasons set forth above in section II (C)(1), White's supervisory claims against Lashway are also ripe for summary judgment.

29

Accordingly, the undersigned recommends that summary judgment be granted as to White's supervisory claims against Lashway.

## D. Remaining Claims[16]

### 1. Oropallo, Lashway and Nurse White

White claims that defendants Oropallo, Lashway, and Nurse White violated DOCCS Directive #4933 (Special Housing Units); DOCCS Directive #4065 (Reporting Injuries and Occupational Illnesses); DOCCS Directive #4059 (Response to Health Care Emergencies), 9 N.Y.C.R.R. §§ 7651.10(h),[17] and 7651.12(a).[18] <u>See</u> Dkt. No. 164 at 13-17, 23-24; Dkt. No. 170; Dkt. No. 178.

"Violations of state law do not give rise to claims under 42 U.S.C. § 1983 . . . [, and, m]ore specifically, a violation of a DOCCS directive does not state a claim for a constitutional violation under § 1983." <u>Tuitt v. Chase</u>, No. 9:11-CV-0776 (DNH/TWD), 2013

---

[16] The Court previously dismissed plaintiff's claim that Rock, Uhler, and Lira violated state laws or regulations regarding the preservation of facility videos and failed to "follow their own state regulations and directives." Dkt. No. 42 at 20.

[17] Section 7651.10 is entitled Ambulatory Health Care Services and provides, in pertinent part:

> (h) Where an inmate is punitively segregated in a cell or room apart from the general population of the facility for a period in excess of 24 hours, such inmate shall be visited by a member of the health care staff in accordance with paragraph (c) of subdivision (6) of section 137 of the Correction Law.

9 NYCRR § 7651.10.

[18] Section 7651.12 is entitled Medical Emergency Services and provides, in pertinent part:

> (a) Each correctional facility shall provide access to emergency services which permit the medical evaluation, treatment and disposition of medical emergency cases on a 24-hour basis each day.

9 NYCRR § 7651.12.

WL 877439, at *10 (N.D.N.Y. Jan. 30, 2013 (citation omitted); Cusamano v. Sobek, 604 F.

Supp. 2d 416, 482 (N.D.N.Y. 2009) (collecting cases). Similarly, a state employee's

violation of the New York Regulations and prison procedures, without more, does not give

rise to liability under § 1983. See Cepeda v. Urban, No. 12-CV-0408, 2014 WL 2587746, at

*5-6 (W.D.N.Y. June 10, 2014) (citations omitted); see also Austin v. Fischer, No. 09 Civ.

4812, 2010 WL 3187642, at *4 (S.D.N.Y. Aug. 11, 2010) (quoting Blouin ex rel. Estate of

Pouliot v. Spitzer, 356 F.3d 348, 363 (2d Cir. 2004) ("'[s]tate procedures designed to protect

substantive liberty interests entitled to protection under the federal constitution do not

themselves give rise to additional substantive liberty interests.'")). A violation of a DOCCS

directive, with out more is also not "a violation of any New York State law, statute, or

regulation." Collins v. Ferguson, 10-CV-6350 (FPG), 2015 WL 1044359, at *7 (W.D.N.Y.

Mar. 10, 2015) (citation omitted). As discussed supra, the undersigned recommends

dismissal of all federal claims against Oropallo, Lashway, and Nurse White as White has

failed to produce admissible establishing that these defendants violated White's

constitutional rights. With respect to violations of DOCCS Directives, as it is well settled

that violations of state law or DOCCS directives do not give rise to claims under section

1983, the undersigned also recommends summary judgment be granted on these state

claims against Oropallo, Lashway, and Nurse White.


### 2. Drake

White claims that Drake violated New York Correction Law § 137(5) and various

sections of the DOCCS Employee Manual (Rev. 2013).[19]  See Dkt. No. 164 at 13.   New

York Correction Law § 137(5) provides, in pertinent part, "[n]o inmate in the care or custody

of the department shall be subjected to degrading treatment, and no officer or other

employee of the department shall inflict any blows whatever upon any inmate, unless in self

defense, or to suppress a revolt or insurrection."  N.Y. Corr. Law § 137(5).

    White's New York Correction Law § 137(5) claim is barred pursuant to New York

Correction Law § 24(1).  Section 24(1) provides:

> No civil action shall be brought in any court of the state,
> except by the attorney general on behalf of the state, against
> any officer or employee of the department . . . in his or her
> personal capacity, for damages arising out of any act done or
> the failure to perform any act within the scope of the
> employment and in the discharge of the duties by such officer
> or employee.

New York Correction Law § 24(1); Baker v. Coughlin, 77 F.3d 12, 15 (2d Cir. 1996).

"Section 24 is not a bar to claims against corrections officers and employees under § 1983."

Parris v. New York State Dep't of Corr. Services, 947 F. Supp. 2d 354, 356 (S.D.N.Y. 2013)

(citing Haywood v. Drown, 556 U.S. 729, 740-41 (2009)).

    Courts look at the following factors to determine whether a defendant's action is within

the scope of employment for purposes of determining applicability of section 24:

> the connection between the time, place and occasion for the
> act; the history of the relationship between employer and
> employee as spelled out in actual practice; whether the act is
> one commonly done by any employee; the extent of departure

---

[19] White alleges violations of sections 2.1, 2.2, and 9.4 of the DOCCS Employee Manual.  The
DOCCS Employee Manual is not part of the record herein.  According to plaintiff's iteration of the Manual,
section 2.1 addresses the need to avoid "unethical conduct" and section 2.2 provides that the employee is to
avoid violation of any state or federal law, or any rule, regulation, or DOCCS directive.  Dkt. No. 163 at 13.
Plaintiff alleges that section 9.4 addresses the need to submit a "use of force report" by any employee who
uses force against an inmate.  Id.

> from normal methods of performance; and whether the
> specific act was one that the employer could reasonably have
> anticipated.

Ierardi v. Sisco, 119 F.3d 183, 187 (2d Cir. 1997) (quotations and citations omitted) (holding

that the defendant's alleged sexual harassment against another employee was not

undertaken in the discharge of his duties and, thus, was beyond the protection afforded to

officers under § 24).

The test to determine whether the defendants' actions fall within the scope of their

employment is "'whether the act was done while the servant was doing his master's work no

matter how irregularly, or with what disregard of instructions.'" Cruz v. New York, 24 F.

Supp. 3d 299, 309 (W.D.N.Y. 2014) (citation omitted). Conduct that is "purely for personal

reasons unrelated to the employer's interests, . . . which is a substantial departure from the

normal methods of performing [an officer's or employee's] duties is not considered within

the scope of employment." Johnson v. New York State Dep't of Corr. Servs. & Cmty.

Supervision, No. 11-CV-079S, 2013 WL 5347468, at *2 (W.D.N.Y. Sept. 23, 2013) (quoting

Gore v. Kuhlman, 217 A.D.2d 890, 891 (N.Y. App. Div. 1995)). "Custody and control of

inmates and the maintenance of prison safety and security are the primary duties and

responsibilities of correction officers." Cepeda v. Coughlin, 128 A.D.2d 995, 997 (N.Y. App.

Div. 1987).

Based upon the record herein, Drake was on duty in the correctional facility and

performing his "basic job function(s)" at the time of the alleged constitutional violations.

See Crosby v. Russell, No. 10-CV-0595 (TJM/DEP), 2014 WL 3809129, at *6 (N.D.N.Y.

Aug. 1, 2014) ("Transporting an inmate and subduing that individual, should a disciplinary

issue arise, is 'common[ ]' conduct by a DOCCS officer or sergeant."). "'While they may

33

allege constitutional deprivations and actions exceeding the scope of a correction[ ] officer's authority, these types of claims have consistently been treated as giving rise to immunity from suit for pendent state law claims against correction[ ] officers in their individual capacities.'" See Ames v. New York Dep't of Corr. & Cmty. Supervision, No. 9:12-CV-01487 (MAD), 2015 WL 4126326, at *14 (N.D.N.Y. Mar. 24, 2015) (quoting Crump v. Ekpe, No. 07-CV-1331, 2010 WL 502762, at *18 (N.D.N.Y. Feb. 8, 2010); Williams v. Fischer, 09-CV-1258 (NAM/DEP), 2011 WL 1812527, at *11 (N.D.N.Y. Feb. 9, 2011) (citing, inter alia, Baker v. Coughlin, 77 F.3d 12, 15-16 (2d Cir. 1996)). Thus, White's pendent state law claims are barred by New York Corrections Law § 24.

Furthermore, for the reasons set forth supra, Drake's alleged violations of various sections of the DOCCS Employee Manual fail to give rise to a constitutional claim actionable under § 1983. See Flynn v. Ward, No. 15-CV-1028 (GLS/CFH), 2015 WL 8056060, at *4 (N.D.N.Y. Dec. 4, 2015) (dismissing the plaintiff's claim that the defendants violated the Facility Operations Manual because "[a] Section 1983 claim brought in federal court is not the appropriate forum to raise violations of prison regulations."). Accordingly, the undersigned recommends summary judgment be granted on these claims against Drake.

## E. Qualified Immunity

Defendants argue that, even if White's claims are substantiated, they are nevertheless entitled to qualified immunity. Defendants assert that, "for all the reasons outlined above setting forth the medical treatment provided to Plaintiff during the time period in issue," defendants acted reasonably. Dkt. No. 139-3 at 19.

Qualified immunity generally protects government officials from civil liability "insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd 80 F. App'x 146 (2d Cir. 2003). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991) (citing Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990)). A court must first determine whether, if the plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194 (2001). Only if there is a constitutional violation does a court proceed to determine whether constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.

Here, with respect to Nurse White, Oropallo, Lashway, Rock, Uhler, and Lira, the second prong of the inquiry need not be addressed with respect to White's claims because, as discussed supra, it has not been shown that these defendants violated White's constitutional rights. Accordingly, in the alternative to a dismissal on the merits, it is recommended that defendants' motion on behalf of Nurse White, Oropallo, Lashway, Rock, Lira, and Uhler, on this ground be granted. Having determined that White's excessive force claim presents triable issues of fact, the undersigned recommends denying the motion for summary judgment on the basis of qualified immunity as it relates to defendant Drake.

35

## III. CONCLUSION

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 139) be **GRANTED as to**:

(1) the Eighth Amendment medical indifference claims against all defendants;

(2) the supervisory liability claims against Rock, Uhler, Lira, and Lashway; and

(3) the state law claims against Drake, Nurse White, Lashway, and Oropallo;

and it is further;

(4) all claims against defendants in their official capacities; or, in the alternative, that summary judgment be granted as to defendants Rock, Uhler, Lira, Lashway, Drake, White, and Oropallo on the basis of qualified immunity; and it is further

**RECOMMENDED** that White, Lashway, Oropallo, Rock, Uhler, and Lira be **dismissed** as defendants from this action; and it is further

**RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 139) be **DENIED as to**:

(1) the Eighth Amendment excessive force claim against defendant Drake; and

(2) defendants' qualified immunity defense as to defendant Drake; it is

**ORDERED**, that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1( c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN**

**FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d

85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15

(2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

**IT IS SO ORDERED.**

Dated: February 23, 2016
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge